MAGEN v DEPARTMENT OF TREASURY

Docket No. 302771. Submitted March 13, 2012, at Lansing. Decided
February 21, 2013, at 9:15 a.m.

Ruth Magen brought an action in the Court of Claims against the
Department of Treasury, appealing its assessment of tax deficiencies
resulting from its determination that the distributions from her late
husband's private individual retirement account (IRA), which had
been rolled over from a 403(b) public retirement account and de-
ducted from the couple's annual gross income on their joint tax
returns in 2005 through 2007, were not fully tax-deductible under the
Income Tax Act, MCL 206.1 *et seq.* The court, James R. Giddings, J.,
granted plaintiff's motion for summary disposition, vacated the
assessments, and awarded plaintiff her claimed tax refunds plus
interest and costs. Clinton Canady III, J., denied defendant's motion
for reconsideration. Defendant appealed.

The Court of Appeals *held*:

The Court of Claims properly concluded that plaintiff's IRA
distributions were not subject to Michigan income tax. Under the
Income Tax Act, an individual's taxable income is equal to that
person's adjusted gross income as defined by federal tax law, subject
to certain additions and deductions. MCL 206.30(1)(f)(*i*) directs
taxpayers to deduct from their adjusted gross income any retirement
or pension benefits received from a public retirement system of or
created by the state or its political subdivisions. MCL 206.30(1)(f)(*iii*)
provides that "retirement or pension benefits" generally includes
distributions from 403(b) accounts. By contrast, MCL 206.30(8)(d)(*i*)
provides that retirement and pension benefits do not include
amounts received from a plan that allows the employee to set the
amount of compensation to be deferred and does not prescribe
retirement age or years of service. Normally, a private IRA would fall
under MCL 206.30(8)(d) and would not be tax-free. However, given
that 403(b) benefits received as a lump-sum payment and deposited
in a bank or investment account are not taxed upon withdrawal,
harmonizing the statutes by allowing deductions such as those at
issue was fully consistent with the Legislature's intent to excuse from
state income tax those sums earned by state employees and placed,
until their retirement, in a 403(b) account.

Affirmed.

Judge WILDER, dissenting, would have reversed and remanded for entry of summary disposition in defendant's favor, noting that, contrary to the Court of Claims' ruling, the benefits at issue were statutorily defined exclusively as distributions and that distributions from private IRAs are not one of the enumerated distributions eligible as deductions to taxable income under MCL 206.30. He further noted that the Legislature's decision to treat public retirement accounts more favorably for taxation purposes was not absurd in light of their lower potential for return on investment than riskier private IRAs.

TAXATION — RETIREMENT AND PENSION BENEFITS — INDIVIDUAL RETIREMENT ACCOUNTS — 403(b) PUBLIC RETIREMENT ACCOUNTS — ROLLOVERS — DISTRIBUTIONS.

Distributions from a private individual retirement account (IRA) are fully deductible from state income taxes if the principal of the IRA wholly originated in a nontaxable 403(b) public retirement account (MCL 206.30).

*Lowe Law Firm, P.C.* (by *Richard C. Lowe* and *Paul J. Cervenak*), and *Michael Flintoff* for plaintiff.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Heidi L. Johnson-Mehney*, Assistant Attorney General, for defendant.

Before: M. J. KELLY, P.J., and WILDER and SHAPIRO, JJ.

SHAPIRO, J. Defendant, the Department of Treasury, appeals as of right an order granting summary disposition in favor of plaintiff, Ruth Magen, regarding the taxability of distributions from a private individual retirement account (IRA) whose principal wholly originated in a nontaxable 403(b) retirement account. We affirm because placing otherwise tax-free money into an IRA does not create an obligation to pay taxes on that money.

Plaintiff's now-deceased husband, Myron Magen,[1] was formerly employed by Michigan State University.

---

[1] All references to "Magen" are to the decedent.

While employed, Magen contributed to a 403(b) retirement account sponsored by MSU. Upon his retirement, Magen transferred the 403(b) monies to a private IRA. The entire principal amount in the IRA had previously been held in the MSU 403(b) account. Later, Magen received distributions from the IRA and, in tax years 2005 through 2007, deducted the sums from the state income tax returns he filed jointly with plaintiff.

Defendant disagreed with the Magens' deductions, asserting that the sums were not deductible, and assessed the Magens for the income tax deficiency. Plaintiff appealed in the Court of Claims, which granted summary disposition to plaintiff and vacated the assessments. Defendant appealed in this Court.

Resolution of this case requires that we interpret two provisions of the Income Tax Act, MCL 206.1 *et seq*. One defines certain retirement accounts as not subject to state income tax. A second defines certain retirement accounts that are subject to state income tax. In reaching a conclusion, our primary goal must be to give effect to the intent of the Legislature. *Kessler v Kessler*, 295 Mich App 54, 60; 811 NW2d 39 (2011). The intent of the statutes must be determined from an examination of their language and from an examination of the statute within the structure of the act as a whole. See *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).[2]

In 1967, the Legislature passed the Income Tax Act, under which an individual's taxable income is equal to that person's adjusted gross income as defined by federal tax law, subject to certain additions and deduc-

---

[2] "When interpreting a court rule or statute, we must be mindful of 'the surrounding body of law into which the provision must be integrated . . . .' " *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005), quoting *Green v Bock Laundry Machine Co*, 490 US 504, 528; 109 S Ct 1981; 104 L Ed 2d 557 (1989) (Scalia, J., concurring).

tions. MCL 206.30(1). Currently, as during the tax years at issue, MCL 206.30(1)(f)(*i*) calls for taxpayers to deduct from their adjusted gross income any "[r]etirement or pension benefits received from a federal public retirement system or from a public retirement system of or created by this state or a political subdivision of this state."

> As used in [MCL 206.30(1)(f)], "retirement or pension benefits" means distributions from all of the following:

> (a) Except as provided in subdivision (d), qualified pension trusts and annuity plans that qualify under section 401(a) of the internal revenue code, including all of the following:

> \* \* \*

> (*iii*) Employee annuities or tax-sheltered annuities purchased under section 403(b) of the internal revenue code by organizations exempt under section 501(c)(3) of the internal revenue code, or by public school systems.

> \* \* \*

> (d) Retirement and pension benefits do not include:

> (*i*) Amounts received from a plan that allows the employee to set the amount of compensation to be deferred and does not prescribe retirement age or years of service. [MCL 206.30(8)].

The parties agree that the 403(b) account in which plaintiff's money originated constituted the type of plan protected by MCL 206.30(8)(a)(*iii*). It is also undisputed that a private IRA would normally fall under MCL 206.30(8)(d), and would not be tax-free. Defendant argues that because the distributions came directly from the private IRA, they must be taxed regardless of the fact that the principal in the IRA originally came from a tax-free retirement plan.

It is not disputed that a state retiree may receive those tax-free benefits in the form of periodic annuity payments

or in the form of a single lump-sum payment at the time of his or her retirement. It is also agreed that if a retiree opts for the lump-sum payment and places that sum in a bank account or an ordinary investment account, the amount deposited is not subject to Michigan income tax when withdrawn. The interest earned on those monies is taxable, but the principal composed of Michigan state pension benefits is not taxed upon withdrawal from the account or sale of the investment purchased.

The state, however, now asserts that if the lump-sum payment is placed into an IRA, the entire principal, i.e. all the pension income, is subject to Michigan income tax, not merely the interest or other gains based on that principal. The state bases this argument on the fact that MCL 206.30(8)(d) provides for taxation of withdrawals from IRAs. However, we cannot simply select one statute to follow and ignore the other. It is instead our responsibility to harmonize them. And in this case, harmonizing the statutes is fully consistent with the Legislature's intent to excuse from state income tax those sums earned by state employees and placed, until their retirement, in a 403(b) account.

IRA withdrawals are fully taxable because the monies normally deposited in such accounts are "tax deferred." Indeed, providing a mechanism for tax deferral of otherwise taxable income is the very reason for the creation of IRAs. Placement of the pension payment in an IRA provides tax *deferral* of federal income tax otherwise due upon receipt.[3] Michigan's Income Tax Act was written to operate the same way. Instead of being taxed at the time that the money is earned, the tax is not applied until the funds are distributed from the IRA. MCL 206.30.

---

[3] Michigan has no authority to declare its pension benefits not subject to federal taxes.

However, in this case the income placed into the IRA was not state-*tax-deferred* income; it was state-*nontaxable* income. Obtaining deferral on applicable taxes by rolling those monies over into an IRA does not create a deferred obligation to pay Michigan income tax on monies that were not subject to state income tax to begin with. Moreover, it would be an absurd construction of the statute to conclude that the Michigan Legislature intended to make pension benefits nontaxable unless they were placed in an IRA. We can conceive of no rational basis to make such benefits taxable if placed in an IRA, but not if placed in an ordinary investment account or a bank or in a mattress. The Department of Treasury argues that Magen still got the benefit of his 403(b) account status when he rolled the funds into the IRA, but this is incorrect. The money would not have been taxed going *into* the IRA under any circumstances.

An IRA is a vehicle to defer taxes due, not to create taxes where none exist. The trial court thus properly concluded that plaintiff's IRA distributions were not subject to Michigan income tax.[4]

Affirmed.

M. J. KELLY, P.J., concurred with SHAPIRO, J.

---

[4] Our dissenting colleague fairly observes that if one looks solely at the language of MCL 206.30(8)(d), the Department of Treasury should prevail. What the dissent fails to take into account, however, is that there are *two* statutes at issue here; the Legislature passed them both and it is not for us as judges to simply select one to apply and one to ignore. Rather, it is our role to give effect to each of them and to harmonize them consistently with their language and purpose. Moreover, we cannot, as the dissent wishes to do, resolve this case on the basis of federal income tax law since the whole point of this case is that the applicable *Michigan* tax law, quite unlike the *federal* law, does not defer state income tax on state pensions, but rather eliminates it. Lastly, we reject the dissent's suggestion that we have reached our conclusion because we "perceive a contrary result to be absurd." Our opinion makes no such statement and

WILDER, J. (*dissenting*). I respectfully dissent. I would reverse and remand for entry of summary disposition in favor of defendant because plaintiff was not entitled to deduct from her income any funds distributed from her traditional IRA.

A trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10) is reviewed de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). The motion is properly granted if the evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001). This issue also involves the interpretation of a statute, which is a question of law that this Court reviews de novo. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010).

The primary goal of judicial interpretation is to ascertain and give effect to the intent of the legislative body that created the language. See *Kessler v Kessler*, 295 Mich App 54, 60; 811 NW2d 39 (2011). The first factor in determining legislative intent is the specific language of the legislation. *Capitol Props Group, LLC v 1247 Center Street, LLC*, 283 Mich App 422, 434; 770 NW2d 105 (2009). "The language of a statute must be accorded its plain and ordinary meaning." *Kessler*, 295 Mich App at 59-60. Furthermore, "[w]hen a statute's language is clear and unambiguous, judicial construction or interpretation is not necessary or permissible." *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 408; 809 NW2d 669 (2011).

---

that is not our view. The outcome suggested by the Department of Treasury and the dissent is not absurd. It is, however, based on a flawed analysis given its premise that a statute passed by the Legislature that limits the state's authority to tax its citizens' income can simply be ignored.

Generally, Michigan's income tax liability is derived from a taxpayer's federal adjusted gross income. However, during the tax years relevant in the instant case, Michigan tax law provided: "Deduct the following to the extent included in adjusted gross income: (*i*) Retirement or pension benefits received from a federal public retirement system or from a public retirement system of or created by this state or a political subdivision of this state." MCL 206.30(1)(f)(*i*).[1] Further, during the relevant tax years, MCL 206.30(8) defined "retirement or pension benefits" as "distributions from all of the following:"

(a) Except as provided in subdivision (d), qualified pension trusts and annuity plans that qualify under section 401(a) of the internal revenue code, including all of the following:

\* \* \*

(*iii*) Employee annuities or tax-sheltered annuities purchased under section 403(b) of the internal revenue code by organizations exempt under section 501(c)(3) of the internal revenue code, or by public school systems.

\* \* \*

(d) Retirement and pension benefits do not include:

(*i*) Amounts received from a plan that allows the employee to set the amount of compensation to be deferred and does not prescribe retirement age or years of service. These plans include, but are not limited to, all of the following:

(A) Deferred compensation plans under section 457 of the internal revenue code.

(B) Distributions from plans under section 401(k) of the internal revenue code other than plans described in subdivision (a)(*iv*).

---

[1] This provision has since been amended. See 2011 PA 38.

(C) Distributions from plans under section 403(b) of the internal revenue code other than plans described in subdivision (a)(*iii*).

In ruling in favor of plaintiff, the trial court concluded that "[b]y moving his retirement account, [Magen] did nothing to change [the monies'] character as 'benefits.' They were still 'benefits' realized from his retirement plan because of his MSU employment." The trial court further stated:

> Treasury's mistake is its focus on the word "distribution." The statute does not use the word "distribution"— but rather uses the word "benefits." Presumably, the legislature used the word "benefit" for a purpose. It appears that their intention was to permit public employees, such as Dr. Magen, to receive a full deduction for retirement "benefits" as long as such benefits were accrued and received because of their public service. It is inconsistent with that policy to impose a tax on such benefits simply because the retiree decides, after retirement, to move his/her account to a private IRA.

The trial court's view that the statute does not use the word "distribution"—but rather uses the word "benefits"—was plainly incorrect. The statute precisely defines "retirement or pension benefits" as "distributions" from certain sources. MCL 206.30(8). Thus, contrary to the trial court's interpretation, the benefits at issue are defined *exclusively as distributions*.

There is no dispute that the distributions at issue were from a private IRA. Distributions from private IRAs are not one of the enumerated distributions eligible as deductions to taxable income. While plaintiff argues, and the majority agrees, that there is no public-policy basis to treat as taxable income funds distributed from a private IRA that originated in a tax-free 403(b) account, the plain language of the

statute demonstrates clearly the Legislature's intent to distinguish between distributions from "public" retirement accounts and "private" retirement accounts. Moreover, the statutory scheme makes no room for inquiry into the original source of the funds being distributed. Thus, while plaintiff, the trial court, and the majority may disagree with this policy, the Legislature has clearly chosen to give preferential treatment to distributions from public retirement accounts by limiting the designation of funds eligible for deduction to public rather than private accounts.

In support of its analysis affirming the result reached by the trial court, the majority notes that 403(b) funds deposited into, and then distributed from, a bank account or an ordinary investment account would not be taxable when distributed, and then argues by analogy that 403(b) funds deposited into an IRA should similarly not be taxable when those funds are later distributed from the IRA. However, the reason withdrawals from a bank account or an investment account are not subject to income tax upon distribution is that the distribution of funds from these types of accounts would not be considered income. As noted previously, for state income tax purposes, a taxpayer's income is derived from the taxpayer's federal adjusted gross income. The IRS defines "gross income" as "all income from whatever source derived." 26 USC 61(a); see also *Knight v Internal Revenue Comm'r*, 552 US 181, 184; 128 S Ct 782; 169 L Ed 2d 652 (2008). "Income may be defined as the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets . . . ." *Eisner v Macomber*, 252 US 189, 207; 40 S Ct 189; 64 L Ed 521 (1920) (citations and quotation marks omitted). A person withdrawing money from

an investment account or bank account is moving
assets already earned and not necessarily deriving
"gain" or "wealth" by the withdrawal of those assets.[2]

In contrast, withdrawals and disbursements from
traditional IRAs are specifically considered income sub-
ject to taxation under the Internal Revenue Code. See
26 USC 408(d)(1) ("[A]ny amount paid or distributed
out of an individual retirement plan shall be included in
gross income by the payee or distributee . . . ."); *Taproot
Admin Servs, Inc v Internal Revenue Comm'r*, 679 F3d
1109, 1112 n 4 (CA 9, 2012) (noting that one of the
hallmark traits of a traditional IRA is "the inclusion of
distributions in gross income"). Hence, there is no
question that the disbursements from the IRA are to be
included in the taxpayer's gross income.

The majority concedes that IRA withdrawals are
generally taxable, but it concludes that such withdraw-
als are taxable only on the basis that funds deposited
into an IRA become "tax deferred" until such time as
the funds are withdrawn. The majority then reasons
that the monies at issue here, which were unquestion-
ably distributed from plaintiff's IRA, should not be
taxed because the monies deposited into plaintiff's
traditional IRA were regarded as state-nontaxable in-
come in the first instance. I disagree with this analysis.
While the deposits of funds into traditional IRAs may
have a certain "tax deferral" *effect*, the statutory
scheme actually refers, not to tax *deferral*, but to
*contributions* and *deductions* instead. Thus, taxpayers
can deduct *contributions* to a traditional IRA from their
income, *Rousey v Jacoway*, 544 US 320, 323; 125 S Ct

---

[2] Interest earned on funds held in an investment account or a bank
account constitutes an addition to wealth and, as such, *is* considered
income. 26 USC 61(a)(4).

1561; 161 L Ed 2d 563 (2005), citing 26 USC 219(a), and upon *distribution* from the IRA, these same funds are then taxable as income.[3]

As is clear from the language of MCL 206.30(1)(f), the Legislature recognized that public retirement monies, such as those from 403(b) accounts, are treated as part of annual gross income under the Internal Revenue Code, but it then allowed for the distribution of these monies to be *deducted* from annual gross income, thereby creating a nontaxable *effect*. Because the Legislature provided no such deduction for distributions from a traditional IRA, the majority here sanctions a deductible event not contemplated by the plain language of the statute, for the reason that it perceives a contrary result to be absurd. It is not for this Court to judge the wisdom or desirability of legislative policy; instead, our role simply is to interpret and give effect to the words in the statute. *Calovecchi v Michigan*, 461 Mich 616, 624; 611 NW2d 300 (2000). In any event, I perceive no absurd result in a legislative determination to treat retirement accounts available only to public employees more favorably than private, traditional retirement accounts. For one thing, the investment risk associated with public retirement accounts could plausibly be much less than the level of risk associated with private, traditional IRAs. Given the variable levels of risk that might be available under each vehicle, a private IRA might render a higher investment return, even after tax, than would a less risky public retirement account, and it would not be irrational, and is certainly within its prerogative, for the

---

[3] Note also that a taxpayer can contribute previously taxed income into a Roth IRA, and deduct income distributions from the Roth. See *Taproot Admin Servs*, 679 F3d at 1112 n 4.

Legislature to provide more favorable tax treatment to the less lucrative retirement vehicle available to public employees.

For the above reasons, I respectfully dissent.