# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 14-3036

———————————————

Marvin E. DeBough

*Appellant*

v.

Douglas Shulman, Commissioner of Internal Revenue

*Appellee*

——————————

The United States Tax Court

——————————

Submitted: June 9, 2015
Filed: August 28, 2015

——————————

Before LOKEN, BYE, and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

In 1966, Marvin DeBough purchased a residence and surrounding 80 acres of mixed-use land in Delano, Minnesota (the property) for $25,000. On July 11, 2006, DeBough agreed to sell the property for $1.4 million to Stonehawk Corporation and Catherine Constantine Properties, Inc. (the buyers) pursuant to an installment contract. The buyers' indebtedness was secured by the property.

Because the property was his principal residence, DeBough excluded $500,000 of gain from income on his 2006 tax return pursuant to 26 U.S.C. § 121 (the principal-residence exclusion). This left taxable income of $157,796 on the sale of the property. DeBough reported this income as installment sale income, beginning in 2006. DeBough received a total of $505,000 from the buyers and reported a total of $56,920 as taxable installment sale income for tax years 2006, 2007, and 2008.

In 2009, the buyers defaulted and DeBough reacquired the property, incurring $3,723 in costs related to the reacquisition. DeBough kept the $505,000 he had previously received from the buyers as liquidated damages. On his 2009 tax return, DeBough treated this event as a reacquisition of property in full satisfaction of indebtedness under 26 U.S.C. § 1038.[1] In calculating his realized gain on the reacquisition, DeBough again applied the $500,000 principal-residence exclusion. DeBough reported $97,153 as long-term capital gains related to the reacquisition of the property for tax year 2009. DeBough did not resell the property.

In 2012, the Commissioner sent DeBough a notice of deficiency with respect to his 2009 tax return. The Commissioner determined DeBough had underreported $448,080 in long-term capital gain for tax year 2009 by applying the principal-residence exclusion in his calculation of gain. DeBough filed a petition with the Tax Court, seeking a redetermination of the deficiency for tax year 2009. The Tax Court[2] agreed with the Commissioner, finding DeBough was not entitled to the principal-residence exclusion because he had not resold the property within one year. DeBough timely appealed. We affirm.[3]

_____

[1]26 U.S.C. § 1038 provides rules for calculating gain with respect to certain reacquisitions of property.

[2]The Honorable Joseph W. Nega, United States Tax Court Judge.

[3]We have jurisdiction under 26 U.S.C. § 7482.

# I. Discussion

DeBough asserts that the Tax Court erred by not allowing him to claim the $500,000 principal-residence exclusion when he reacquired the property in 2009. In support of reversal, he contends that the Tax Court's interpretation of § 1038 is contrary to the intent of Congress and produces an unduly harsh result. This case of first impression requires us to construe the relationship between §§ 121 and 1038 of the tax code.

In reviewing Tax Court decisions, we review legal questions and mixed questions of law and fact de novo. Clajon Gas Co., L.P. v. Commissioner, 354 F.3d 786, 789 (8th Cir. 2004). The Tax Court's factual findings are reviewed under a clearly erroneous standard. Id. In interpreting statutes, we rely on traditional rules of statutory interpretation. POM Wonderful LLC v. Coca-Cola Co., — U.S. —, 134 S. Ct. 2228, 2236 (2014). "Analysis of the statutory text, aided by established principles of interpretation, controls." Id.

It has long been held that any "accessions to wealth, clearly recognized, and over which the taxpayers have complete dominion," usually are included in gross income. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Gain from the sale of real property is generally calculated as the amount by which the sales price of the property exceeds the seller's adjusted basis in the property. 26 U.S.C. § 1001(a). However, if the real property is the taxpayer's principal residence, a married seller filing a joint return may exclude up to $500,000 of gain from the sale. 26 U.S.C. § 121(a), (b)(2).

One of the risks of selling real property on installment, as DeBough did with his principal residence, is that a buyer may default. Prior to 1964, a taxpayer who reacquired real property on default was required to recognize gain upon reacquisition at the fair market value of the property when it was reacquired. This rule was often

difficult to apply and sometimes unfair to the taxpayer,

> because (1) the taxpayer was actually in no better position than he was
> before he made the sale; (2) valuation at the time of repossession was
> difficult; (3) to tax the initial seller on gain at the time of repossession
> was to tax him on gain not yet realized; and (4) because the taxpayer had
> not received a monetary return with respect to the property, funds to pay
> the taxes may be unavailable.

Conners v. Commissioner, 88 T.C. 541, 544–45 (1987) (citing S. Rep. 88–1361 (1964)). For these reasons, Congress added § 1038 to the tax code, providing specific rules for computing gain when a seller reacquires real property in satisfaction of a debt secured by that property. See id.

The parties agree that § 1038 applies in this case, because DeBough reacquired the property in full satisfaction of the buyers' debt after the buyers defaulted. Section 1038 reads in part as follows:

> (a) General rule.—If—
>
> > (1) a sale of real property gives rise to indebtedness to the
> > seller which is secured by the real property sold, and
> >
> > (2) the seller of such property reacquires such property in
> > partial or full satisfaction of such indebtedness,
> >
> > then, except as provided in subsections (b) and (d), no gain
> > or loss shall result to the seller from such reacquisition, and
> > no debt shall become worthless or partially worthless as a
> > result of such reacquisition.

(b) Amount of gain resulting.—

> (1) In general.—In the case of a reacquisition of real property to which subsection (a) applies, gain shall result from such reacquisition to the extent that—

>> (A) the amount of money and the fair market value of other property (other than obligations of the purchaser) received, prior to such reacquisition, with respect to the sale of such property, exceeds

>> (B) the amount of the gain on the sale of such property returned as income for periods prior to such reacquisition.

Thus, a taxpayer may disregard gain associated with the reacquisition of property, *except to the extent* that the taxpayer received money from the sale of the property prior to the reacquisition that is more than "the amount of gain on the sale" that was "returned as income" in any tax period prior to the reacquisition. 26 U.S.C. § 1038(b)(1)(B). Here, for example, the parties agree that DeBough received $505,000 from the sale of the property prior to reacquiring the property and claimed $56,920 in gain on the tax returns he filed prior to reacquiring the property. Calculating DeBough's gain, the Commissioner asserts, is simply a matter of subtracting $56,920 from $505,000.

Section 1038 provides a limited exception to the general rule for calculating gain when the reacquired property was originally sold as the taxpayer's principal residence: If a taxpayer reacquires property that was his principal residence, but then resells that property within one year, § 1038(e) allows the taxpayer to continue to apply the principal-residence exclusion when calculating taxable gain. This section states:

(e) Principal residences.—If—

> (1) subsection (a) applies to a reacquisition of real property with respect to the sale of which gain was not recognized under section 121 (relating to gain on sale of principal residence); and

> (2) within 1 year after the date of the reacquisition of such property by the seller, such property is resold by him,

> then, under regulations prescribed by the Secretary, subsections (b), (c), and (d) of this section shall not apply to the reacquisition of such property and, for purposes of applying section 121, the resale of such property shall be treated as a part of the transaction constituting the original sale of such property.

26 U.S.C. § 1038(e).  The Tax Court concluded that the § 1038(e) exception did not apply to DeBough because he did not resell the property within one year.  As a result, the general rules applicable to reacquisitions of real property as outlined in § 1038(b) acted to override the principal-residence exclusion, and the prior status of the property as a principal residence was no longer relevant for tax purposes.

DeBough agrees that, because he did not resell the property within a year of reacquisition, § 1038(e) does not apply.  He asserts, however, that the Tax Code is "silent on the question" of whether the principal-residence exclusion nevertheless remains available even when a reacquired principal residence is *not* resold within one year.  He argues there is nothing in § 1038 that *requires* a taxpayer to recognize gain

that was previously excluded under § 121.[4] He argues the Tax Court's interpretation is counter to Congressional intent and renders an unduly harsh result based solely on the timing of the resale of a principal residence.

"Our analysis begins, as always, with the statutory text." Argus Leader Media v. U.S. Dept. of Agric., 740 F.3d 1172, 1175 (8th Cir. 2014) (quoting United States v. Gonzales, 520 U.S. 1, 4 (1997)). Section 1038(b)(1) requires a taxpayer to recognize gain upon the reacquisition of property to the extent that the amount of money the taxpayer received prior to the reacquisition exceeds the "amount of the gain . . . *returned as income*" in prior years. 26 U.S.C. § 1038(b)(1) (emphasis added). Put another way, we read § 1038(b) as acknowledging two types of gain upon reacquisition of real property: gain that was "returned as income"—that is, reported as income on a prior tax return—and gain that has not yet been "returned as income." On his 2006, 2007, and 2008 tax returns, DeBough reported gain totaling $56,920–i.e., he "returned" $56,920 "as income."

Section 121(a), on the other hand, states that "[g]ross income shall not include gain from the sale . . . [of a] taxpayer's principal residence." 26 U.S.C. § 121(a). "In the case of a husband and wife who make a joint return for the taxable year of the sale . . . of the property," gain of $500,000 can be excluded from gross income. 26 U.S.C. § 121(b). The principal-residence exclusion is, as the name indicates, *excluded* from income. Having been excluded from income in 2006, the $500,000 principal-residence exclusion cannot be considered gain that was "returned as income" on a prior tax return.

---

[4]He contends the Tax Court's holding effectively rewrites § 1038(b)(1)(B) from "the amount of the gain . . . returned as income" to "the amount of the *recognized* gain . . . returned as income" for periods prior to reacquisition.

That Congress added § 1038(e) to the statute also supports the Tax Court's conclusion in this case. If a taxpayer reacquires a principal residence, but resells it "within 1 year after the date of the reacquisition," the general rule in § 1038(b) for calculating gain on a reacquisition does not apply. 26 U.S.C. § 1038(e). "[F]or purposes of applying section 121 [the principal-residence exclusion], the resale of such property shall be treated as a part of the transaction constituting the original sale of such property." Id. DeBough asserts that silence on the question means the principal-residence exclusion is available regardless of when the reacquired property is resold. But if DeBough is right, then the § 1038(e) exception for reacquisition of a principal residence that is sold within one year is completely unnecessary. It is a settled rule of statutory construction that "we must, if possible, construe a statute to give every word some operative effect." Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 167 (2004). Section 1038(e) has no "operative effect" if a taxpayer may claim the principal-residence exclusion regardless of whether, upon reacquisition, he resold the property within one year, resold it after more than one year had passed, or never resold the property. We decline to render part of a statute entirely superfluous. See Knight v. Commissioner, 552 U.S. 181, 190 (2008).

Finally, although we recognize that "the authoritative statement is the statutory text, not the legislative history," Argus Leader, 740 F.3d at 1177 (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005)), we note that the legislative history to § 1038 likewise supports our construction of the statute. In enacting § 1038, Congress provided "[a] *special rule* . . . where the initial sale is that of the taxpayer's principal residence and the taxpayer has not recognized the gain (or part of the gain)" because the gain was previously excluded under § 121. See S. Rep. No. 88-1361, at 7 (emphasis added). Congress provided that

> In such cases where the taxpayer resells the property within 1 year after the repossession, no gain results at the time of repossession and the initial sale and resale are treated as one transaction where the gain

-8-

ordinarily would be limited because a second residence has been purchased or no gain would be recognized because the taxpayer is over age 65.  This treatment in effect ignores the repossession in these cases where the residence is again sold in a reasonable time.

Id.  Congress intended that § 1038(e) apply to those taxpayers who resell a principal residence within "a reasonable time," i.e. one year.  Section 1038(b) applies to all other reacquisitions of real property— regardless of whether the real property ever qualified as a principal residence.  See Andrus v. Glover Constr. Co., 446 U.S. 608, 616–17 (1980). ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").  DeBough has failed to show that limiting this "special rule" to only those taxpayers who resell a principal residence within one year of reacquisition is an unduly harsh one.[5]

We affirm the decision of the Tax Court.

_____

[5]As to this particular case, we note, as the government did at oral argument, that the gain DeBough must recognize as a result of the reacquisition is added to his basis in the property, giving him a stepped-up basis should he again sell the property.