# United States Tax Court

REVIEWED
165 T.C. No. 5

AYLA A. SAVAGE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

PATRICIA A. TORRES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 21606-22, 21607-22.            Filed September 11, 2025.

————

Ps, shareholders of three S corporations, each filed individual income tax returns for 2018 and 2019 reporting items with respect to the S corporations. Two of the S corporations are subject to I.R.C. § 280E, and therefore certain of their deductions were disallowed in determining taxable income for those years.

For 2018 and 2019, Ps claimed qualified business income deductions under I.R.C. § 199A with respect to the activities of the S corporations. In computing the deductions under I.R.C. § 199A, Ps treated as "W–2 wages," within the meaning of I.R.C. § 199A(b)(4), all of the amounts paid and reported by the S corporations without regard to whether those amounts were deductible in determining taxable income.

**Served 09/11/25**

As relevant here, R determined that, under I.R.C. § 199A(b)(4)(B) and (c), the computation of Ps' I.R.C. § 199A deductions should take into account only wages that were deductible after the application of I.R.C. § 280E, *see* I.R.C. § 199A(c)(3)(A)(ii), and reduced Ps' section 199A deductions accordingly.

*Held*: R correctly applied I.R.C. § 199A with respect to the wages at issue.

TORO, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and KERRIGAN, BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, and FUNG, *JJ.*, joined.

JENKINS, *J.*, wrote a dissenting opinion.

—————

*Cory L. Johnson*, for petitioners.

*Allison M. Case*, *Gregory Michael Hahn*, and *Logan M. Westerman*, for respondent.

## OPINION

TORO, *Judge*: The Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (2017), lowered the income tax rate applicable to corporations. *See* TCJA § 13001, 131 Stat. at 2096.[1] To provide a measure of parity for noncorporate business taxpayers (including taxpayers who are taxed on income earned by passthrough entities, such as S corporations),[2] the TCJA also introduced a new deduction under

—————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. On April 4, 2023, these cases were consolidated for purposes of trial, briefing, and opinion.

[2] An S corporation reports items of gross income and deductions to the Internal Revenue Service and its shareholders on an information return, Form 1120–S,

section 199A. *See* TCJA § 11011(a), 131 Stat. at 2063–70. As relevant here, for certain taxpayers, the amount of the deduction is limited by the "W–2 wages" the taxpayer (or the passthrough entity) pays, among other things. *See* I.R.C. § 199A(a), (b)(2). Thus, all else being equal and simplifying considerably, a taxpayer who pays more "W–2 wages" may qualify for a larger deduction than a taxpayer who pays less "W–2 wages."

Section 199A(b)(4) defines the term "W–2 wages." The question before us in these consolidated deficiency cases is whether that term (as Congress defined it) includes or excludes wage amounts for which a deduction is disallowed under section 280E. If such amounts are included in "W–2 wages," petitioners, Ayla A. Savage and Patricia A. Torres, would receive larger section 199A deductions and therefore have lower tax bills. If they are excluded, the opposite would be true.

Ms. Savage and Ms. Torres maintain that wage amounts for which a deduction is disallowed under section 280E are included in the term "W–2 wages" under section 199A(b)(4). The Commissioner takes the contrary view. We conclude that a straightforward reading of the relevant statutory text supports the Commissioner, as we explain further below.[3]

*Background*

The parties submitted these cases fully stipulated under Rule 122. The facts below are based on the pleadings and the parties' Stipulations of Facts (including the Exhibits attached thereto). The parties' Stipulations of Facts with the accompanying Exhibits are incorporated herein by this reference. Ms. Savage and Ms. Torres resided in the State of Washington when they timely filed their Petitions in these cases.

Because the dispute before us is strictly legal, the background we provide here is brief. Ms. Savage and Ms. Torres co-owned three S corporations that filed Forms 1120–S for tax years 2018 and 2019. In the individual federal income tax returns Ms. Savage and Ms. Torres filed for those years, they each claimed the deduction provided under

---

U.S. Income Tax Return for an S Corporation. *See* I.R.C. § 6037(a) and (b); Treas. Reg. § 1.1366-1(a)(1). The shareholders take these items into account on their own returns. *See* I.R.C. § 1366(a).

[3] In view of the dispute the parties have presented to us and our disposition, we express no view on any further interactions between section 199A and section 280E.

section 199A with respect to income earned by the S corporations and passed through to them.

Two of the corporations—Tru Greenthumb, Inc., and Fillabong, Inc.—sell cannabis and cannabis-derived products and are subject to the limitations section 280E imposes.[4] The parties have stipulated that the third—Fillabong and Glass, Inc.—is not subject to the limitations of section 280E.[5]

The parties agree that section 280E limits the amounts of W–2 wages that Tru Greenthumb and Fillabong may deduct from their gross income on their Forms 1120–S for tax years 2018 and 2019. They have stipulated the amounts of W–2 wages Tru Greenthumb and Fillabong paid in tax years 2018 and 2019 (Total W–2 Wages) and the amounts of W–2 wages Tru Greenthumb and Fillabong may deduct from gross income on their Forms 1120–S for tax years 2018 and 2019 after the application of section 280E (Deductible W–2 Wages). The relevant amounts are shown in the tables below.

---

[4] Section 280E provides:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

[5] In *Patients Mutual Assistance Collective Corp. v. Commissioner*, 151 T.C. 176, 198–99 (2018), *aff'd*, 995 F.3d 671 (9th Cir. 2021), we held that a single taxpayer could have multiple trades or businesses, some of which would be subject to section 280E and some of which would not, or a single trade or business consisting of multiple activities all of which would be subject to section 280E, even if the activities are undertaken through separate entities. The record does not disclose the precise trades or businesses of the three S corporations at issue, and we have no reason to believe that the parties' stipulations are inconsistent with the Court's caselaw on the proper delineation of trades or businesses for purposes of applying section 280E. *See Estate of Saia v. Commissioner*, 61 T.C. 515, 519 (1974) (explaining that, while the parties may agree to certain facts by stipulation, the Court is not bound to accept as controlling stipulations as to conclusions of law); *see also Estate of Sanford v. Commissioner*, 308 U.S. 39, 51 (1939) (same).

| Tax Year 2018 | | |
|---|---|---|
| | *Total W–2 Wages* | *Deductible W–2 Wages* |
| Tru Greenthumb | $7,740 | $3,991 |
| Fillabong | 605,955 | 148,782 |
| Fillabong and Glass | -0- | -0- |
| **Total** | **$613,695** | **$152,773** |

| Tax Year 2019 | | |
|---|---|---|
| | *Total W–2 Wages* | *Deductible W–2 Wages* |
| Tru Greenthumb | $168,134 | $40,658 |
| Fillabong | 641,886 | 146,828 |
| Fillabong and Glass | 59,860 | 59,860 |
| **Total** | **$869,880** | **$247,346** |

The only remaining disagreement between the parties is whether (a) Total W–2 Wages or (b) Deductible W–2 Wages should be used for computing the section 199A deductions under section 199A(b)(2)(B)(i) for tax years 2018 and 2019 for Ms. Savage and Ms. Torres.[6]

## Discussion

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)). Resolution of the dispute before us requires close reading of rather technical Code provisions that contain nested definitions. As the Supreme Court has instructed, "'[w]hen a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020) (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)); *see also Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 472 (2024) ("When Congress takes the trouble to define the terms it uses, a court must respect its definitions as 'virtually conclusive.'" (quoting *Sturgeon v. Frost*, 139 S. Ct. 1066, 1086 (2019))). By contrast, when the

---

[6] The parties have resolved by agreement all other issues, including issues concerning tax year 2017.

statute does not define a term, "we ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted" the relevant provision. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 234 (2018) (reviewed).

I.      *Definition of "W–2 Wages"*

We have already noted that, for some taxpayers, the amount of the section 199A deduction is limited by the "W–2 wages" they (or, as is the case here, their passthrough entities) paid. *See* I.R.C. § 199A(a), (b)(2). Thus, the concept of "W–2 wages" is critical to operation of the statute.

Section 199A(b)(4) defines the term as follows:

(4) Wages, etc.—
        (A) In general.—The term "W–2 wages" means, with respect to any person for any taxable year of such person, the amounts described in paragraphs (3) and (8) of section 6051(a) paid by such person with respect to employment of employees by such person during the calendar year ending during such taxable year.
        (B) Limitation to wages attributable to qualified business income.—Such term shall not include any amount which is not properly allocable to qualified business income for purposes of subsection (c)(1).
        (C) Return requirement.—Such term shall not include any amount which is not properly included in a return filed with the Social Security Administration on or before the 60th day after the due date (including extensions) for such return.

A few observations jump out from the text. First, the definition takes the form of a general rule followed by exceptions. Second, both the general rule and one of the exceptions turn on other statutory provisions.

A.      *The General Rule*

Pausing briefly on the general rule, we note that it directs the reader to section 6051(a), which sets out rules concerning the preparation of Forms W–2, Wage and Tax Statement. Paragraph (3) of

section 6051(a) addresses the wages an employer pays an employee, while paragraph (8) generally addresses amounts contributed to tax-advantaged retirement accounts and deferred compensation. Piecing these references together, to determine what the term "W–2 wages" means for purposes of section 199A, one must start with the Form W–2 statements an employer files. And, more specifically, with certain of the amounts reflected in those statements.

But that is only the beginning of the analysis. One must also consider the limitations Congress set out. *See, e.g.*, *Burgess v. United States*, 553 U.S. 124, 130 (2008) ("As a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that is not stated." (quoting *Colautti v. Franklin*, 439 U.S. 379, 392 n.10 (1979))); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012) ("Legal drafters have the power not only to define their terms but also to limit the implications of their terms . . . .").

B.    *The Relevant Exception*

Section 199A(b)(4)(B) expressly provides for one such limitation. Specifically, it says that "[s]uch term"—i.e., the term "W–2 wages"— "shall not include any amount which is not properly allocable to qualified business income for purposes of subsection (c)(1)."[7]

Put another way, although certain amounts may have been reported by an employer to an employee in a Form W–2 under section 6051(a), those amounts do not constitute "W–2 wages" for purposes of section 199A if they are not properly allocable to qualified business income for purposes of section 199A(c)(1). Or, to state the same proposition affirmatively, wages must be properly allocable to qualified business income for purposes of section 199A(c)(1) in order to be considered "W–2 wages" for purposes of section 199A.

1.    *"Properly Allocable"*

The term "properly allocable" is not defined in the statute. Accordingly, we must discern its ordinary meaning when section 199A was adopted. *See, e.g.*, *Food Mktg. Inst.*, 139 S. Ct. at 2362; *Dynamo Holdings Ltd. P'ship*, 150 T.C. at 234.

---

[7] The parties have no dispute with respect to section 199A(b)(4)(C), so we need not discuss that provision further.

"Properly" is the adverbial form of the adjective "proper," defined as "[c]haracterized by appropriateness or suitability; fitting" and "[c]alled for by rules or conventions; correct." *Proper*, *The American Heritage Dictionary* (5th ed. 2018); *Proper*, *The American Heritage Dictionary* (5th ed. 2011) (same).

The word "allocable" means "capable of being allocated." *Allocable*, *The American Heritage Dictionary* (5th ed. 2018); *Allocable*, *The American Heritage Dictionary* (5th ed. 2011) (same); *Allocable*, *Black's Law Dictionary* (10th ed. 2014) ("Capable of being allocated; assignable."). And the word "allocate" in turn means "[t]o set apart for a special purpose; designate." *Allocate*, *The American Heritage Dictionary* (5th ed. 2018); *Allocate*, *The American Heritage Dictionary* (5th ed. 2011) (same); *Allocation*, *Black's Law Dictionary* (10th ed. 2014) ("The amount or share of something that has been set aside or designated for a particular purpose.").

Putting these definitions together, we conclude that the ordinary meaning of the phrase "properly allocable" refers to something that may be designated to go with something else and fits appropriately or correctly (permissibly, one might say) with it. That an amount is "capable of being allocated" to a category in the abstract is not enough. The item must go appropriately or correctly with the category. Any other interpretation would leave the adverb "properly" with no work to do.

### 2. *"Qualified Business Income"*

For the meaning of "qualified business income," we turn to section 199A(c)(1), as instructed. *See, e.g.*, *Tanzin*, 592 U.S. at 47. Section 199A(c) defines the concept of "qualified business income" for all purposes of section 199A. *See* I.R.C. § 199A(c) (noting in the lead text that it applies "[f]or purposes of this section"); *see also Digital Realty Tr., Inc.*, 583 U.S. at 160–61 ("Leaving no doubt as to the definition's reach, the statute instructs that the 'definitio[n] shall apply' '[i]n this section,' that is, throughout [the section at issue]." (quoting 15 U.S.C. § 78u-6)). Section 199A(c)(1)—the specific paragraph referenced in section 199A(b)(4)(B)—provides:

> In general.—The term "qualified business income" means, for any taxable year, the net amount of qualified items of income, gain, deduction, and loss with respect to any qualified trade or business of the taxpayer. Such term

shall not include any qualified REIT dividends or qualified publicly traded partnership income.

Thus, according to section 199A(c)(1), "qualified business income" consists of the net amount of certain items—which the statute terms "qualified items of income, gain, deduction, and loss."

That latter phrase is further defined in section 199A(c)(3). As relevant to our discussion, section 199A(c)(3) provides:

> Qualified items of income, gain, deduction, and loss.—For purposes of this subsection [i.e., for purposes of section 199A(c)]—
>> (A) In general.—The term "qualified items of income, gain, deduction, and loss" means items of income, gain, deduction, and loss to the extent such items are—
>>> (i) effectively connected with the conduct of a trade or business within the United States . . . , and
>>> (ii) included or allowed in determining taxable income for the taxable year.

Working backwards from the statutory definitions makes it easy to understand how the provision works. Wages are included in the term "qualified items of income, gain, deduction, and loss" only "to the extent" they are "allowed in determining taxable income for the taxable year." To state the converse, if certain wage amounts are not "allowed in determining taxable income for the taxable year," those amounts are not part of the term "qualified items of income, gain, deduction, and loss" for purposes of section 199A(c). For convenience, we will refer to these wages amounts as nondeductible wages.

Because nondeductible wages are not part of the defined term "qualified items of income, gain, deduction, and loss," they cannot be included in the defined term "qualified business income" for purposes of section 199A(c)(1).

II.    *Application to Wages Disqualified Under Section 280E*

   A.    *Statutory Analysis*

As we have said, section 199A(b)(4)(B) requires that wages be "properly allocable" to "qualified business income for purposes of

[section 199A(c)(1)]" in order to be considered "W–2 wages" for purposes of section 199A. Under ordinary usage, for wages to be properly allocable to qualified business income, they must be capable of being designated to go with (or set apart for) qualified business income and must fit appropriately, suitably, or correctly with qualified business income. *See supra* Discussion Part I.B.1 (setting out the relevant dictionary definitions).

But nondeductible wages cannot be included in "qualified business income" for purposes of section 199A(c)(1) because the statute expressly excludes them from the scope of that concept. In view of that statutory command, such wages are not capable of being designated to go correctly with (or being set apart for) qualified business income. They do not "fit" "correctly" under that statutory construct and, therefore, are not properly allocable to it. And if nondeductible wages are not properly allocable to qualified business income, they cannot be "W–2 wages" as defined in section 199A(b)(4)(B).

The parties here agree that portions of the wages Tru Greenthumb and Fillabong paid are not "allowed" as deductions "in determining the taxable income" of those corporations. Put differently, the parties agree that the wages whose treatment for purposes of section 199A is in dispute are nondeductible wages.[8] Under our analysis above, those amounts cannot constitute "qualified items of income, gain, deduction, and loss" under section 199A(c)(3) or be part of "qualified business income" for purposes of section 199A(c)(1). Thus, they are not "W–2 wages" within the meaning of section 199A(b)(4)(B).

In short, the Commissioner's position is consistent with the statutory text,[9] and petitioners' position is not.

---

[8] For 2018, nondeductible wages were $460,922—i.e., the difference between Total W–2 Wages ($613,695) for Tru Greenthumb and Fillabong and Deductible W–2 Wages ($152,773) for those two entities. *See supra* p. 5. For 2019, nondeductible wages were $622,534—again, the difference between Total W–2 Wages ($810,020) for Tru Greenthumb and Fillabong and Deductible W–2 Wages ($187,486) for those two entities. *See supra* p. 5.

[9] The Commissioner's position is also consistent with the regulations promulgated under section 199A. *See, e.g.*, Treas. Reg. § 1.199A-2(b)(4) ("W–2 wages are properly allocable to [qualified business income] if the associated wage expense is taken into account in computing [qualified business income] under § 1.199A-3."); Prop. Treas. Reg. § 1.199A-2(b)(4), 83 Fed. Reg. 40,884, 40,918 (Aug. 16, 2018) (same). On August 16, 2018, the Department of the Treasury and the Internal Revenue Service

B.    *Petitioners' Arguments*

Ms. Savage and Ms. Torres protest that the Commissioner is ignoring the plain text of section 199A(b)(4)(A). According to them, W–2 wages include "*all* remuneration included on the W–2s issued by the business." Pet'rs' Op. Br. 6. They decry the Commissioner's "attempt to add conditions and additional language not in the statute to limit W–2 wages to those wages allowed to be deducted by the business after application of § 280E" and ask us to reject it "because it is manifestly contrary to the clear statutory language." Pet'rs' Op. Br. 6–7.

But as our analysis above shows, Ms. Savage's and Ms. Torres's view rests on a selective reading of the statute. Their proposed reading focuses on the general rule of section 199A(b)(4)(A), but wholly ignores the express limitation set out in section 199A(b)(4)(B) and the ordinary meaning of the phrase "properly allocable." That is not an acceptable method of statutory analysis. *See United Therapeutics Corp. v. Commissioner*, 160 T.C. 491, 513 (2023) (explaining that a cardinal principle of interpretation requires that we give effect, if possible, to every clause and word of the statute and collecting authorities), *aff'd*, 105 F.4th 183 (4th Cir. 2024); *see also Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 428 (2018) (rejecting an attempt "to cherry pick from the material covered by the statutory cross-reference").

Ms. Savage's and Ms. Torres's claim that the Commissioner is rewriting the statute and adding to it something that is not there fails for similar reasons. As we have explained, the Commissioner's interpretation of section 199A tracks the relevant statutory provisions and gives meaning to each of them. Section 199A(c) expressly tells us how to treat amounts that are not "allowed in determining taxable income for the taxable year." I.R.C. § 199A(c)(3)(A)(ii). Specifically, we must exclude them from qualified business income,[10] and they cannot

---

(collectively, Treasury) published a notice of proposed rulemaking with proposed regulations under section 199A. *See* Qualified Business Income Deduction, 83 Fed. Reg. 40,884. On February 8, 2019, Treasury published a Treasury Decision with final regulations under section 199A. *See* T.D. 9847, 2019-9 I.R.B. 670, 84 Fed. Reg. 2952 (Feb. 8, 2019). The final regulations apply only to taxable years ending after February 8, 2019, although, for taxable years ending in calendar year 2018, taxpayers may rely on either the final regulations in their entirety or the proposed regulations in their entirety. *Id.*

[10] We note that Ms. Savage and Ms. Torres do not object to using wages limited by section 280E (that is, Deductible W–2 Wages) to calculate qualified business income for Tru Greenthumb and Fillabong. That is understandable, as using the lower wage

be "properly allocable" to such income. Therefore, nondeductible wages likewise cannot be "W–2 wages" as the statute defines that term. The Commissioner does not "add to the statute something which is not there," Pet'rs' Op. Br. 13 (cleaned up), when he insists that the statutory provisions be followed.

Furthermore, the text of section 199A(b)(4)(B) focuses the inquiry on whether an amount is "properly allocable" to "qualified business income," a net amount. The text does not refer to "gross receipts" or specific items of income or gain listed in section 199A(c)(3). Congress could, of course, have used those words if it had wished to. It certainly knew how to do so. *See* I.R.C. § 199A(g)(1)(B) (excluding from the definition of "W–2 wages" for purposes of the deduction for income attributable to domestic production activities of specified agricultural or horticultural cooperatives "any amount which is not properly allocable to domestic production gross receipts for purposes of [section 199A(g)(3)(A)]"). The fact that it did not must be respected. *See Digital Realty Tr., Inc.*, 583 U.S. at 161 ("[W]hen Congress includes particular language in one section of a statute but omits it in another[,] . . . this Court presumes that Congress intended a difference in meaning." (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014))); *see also Knight v. Commissioner*, 552 U.S. 181, 188 (2008) ("The fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports rejecting [a] reading [that relies on the rejected alternative text]."); *Thomas v. Commissioner*, 160 T.C. 371, 382–83 (2023) (reviewed) (same).[11]

Congress also could have referred us not to section 199A(c)(1), but to section 199A(c)(3)(A)(i), or even to the term "qualified item of income [or] gain" or some other term, to achieve the result Ms. Savage and Ms. Torres seek. As the Supreme Court has noted, "'Congress often drafts statutes with hierarchical schemes—section, subsection,

---

number in this particular calculation produces greater qualified business income, and the potential for higher section 199A deductions for Ms. Savage and Ms. Torres. But their interpretation of the statute produces an inconsistency: They ask us to use Deductible W–2 Wages for one aspect of the section 199A computation and Total W–2 Wages for another. The Commissioner's interpretation, by contrast, produces no such inconsistency.

[11] Nor does the use of phrase "properly allocable" in other parts of the Code provide petitioners any refuge. Whatever form "proper allocation" might take in other contexts, in view of the specific text and statutory structure here, an amount that expressly may not be a part of "qualified business income" cannot be "properly allocable" thereto, as we have explained above.

paragraph, and on down the line.' *NLRB v. SW General, Inc.*, 580 U.S. 288, 300 (2017). And '[w]hen Congress want[s] to refer only to a particular subsection or paragraph, it sa[ys] so.' *Ibid.* It said no such thing" here. *Cyan, Inc.*, 583 U.S. at 428.

In addition, that section 199A may be patterned after the now-repealed section 199 gives us no license to ignore the actual words Congress used in section 199A(b)(4)(B) and (c) in favor of words that were used in former section 199. "The starting point in discerning congressional intent is the existing statutory text . . . and not the predecessor statutes." *Lamie*, 540 U.S. at 534; *accord United Therapeutics*, 160 T.C. at 507–10.

Finally, Ms. Savage and Ms. Torres press certain policy arguments in favor of their view. We do not find them well founded, but in any event the arguments are misdirected. We have no warrant to rewrite the statutory text Congress wrote. *See Varian Med. Sys., Inc. & Subs. v. Commissioner*, 163 T.C. 76, 102 (2024) (reviewed). "Achieving a better policy outcome . . . is a task for Congress, not the courts." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13–14 (2000); *see also Crowe v. Wormuth*, 74 F.4th 1011, 1032 (9th Cir. 2023) ("[O]ur role is not to devise a 'better' administrative scheme than the one Congress enacted."); *Tex. Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020) ("We are not the final editors of statutes, modifying language when we perceive some [purported] oversight.").

III.    *Conclusion*

To sum up, the Commissioner offers the best reading of the statute. Because the parties have stipulated what the deficiencies would be under their respective positions, we need not order computations under Rule 155, but may enter decisions in accordance with their stipulated computations.

On the basis of those computations, the deficiencies we find for 2018 and 2019 are as follows:

| *Deficiency Amounts* | | |
|---|---|---|
| *Year* | *Ms. Savage* | *Ms. Torres* |
| 2018 | $313,900 | $292,759 |
| 2019 | 187,325 | 186,107 |

We have considered all of the parties' arguments and, to the extent not discussed above, conclude they are irrelevant, moot, or without merit.

To reflect the foregoing,

*Appropriate decisions will be entered.*

Reviewed by the Court.

URDA, *C.J.*, and KERRIGAN, BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, and FUNG, *JJ.*, agree with this opinion of the Court.

JENKINS, *J.*, dissents.

JENKINS, *J.*, dissenting: Respondent concedes that petitioners can deduct some of the income with respect to their cannabis-related businesses in order to reduce their tax on that income. But, respondent argues, the deduction is indirectly zeroed out by a cap intended to limit the benefit to businesses that pay wages to employees. It does not matter that the businesses *did* pay wages to employees, respondent says, because the fact that petitioners are not allowed to deduct the wages means the wages are not properly allocable to the income from the businesses. The opinion of the Court agrees. I respectfully disagree.

I.      *Purposes of Section 199A*

As the opinion of the Court acknowledges, *see* op. Ct. pp. 2–3, Congress created the section 199A deduction to reduce the tax rate that applies to certain income from qualified trades or businesses. Consistent with its purpose, section 199A permits a qualified trade or business to deduct an amount more or less equal to 20% of the U.S. taxable income from such trade or business, subject to a cap. *See* § 199A(a)(2)(A), (b)(2)(A), (c)(1). In these cases, the cap is an amount equal to 50% of "W–2 wages," *see* § 199A(b)(2)(B)(i), consistent with the fact that "Congress intended that [the statute] create jobs in the United States," *Gibson & Assocs. Inc. v. Commissioner*, 136 T.C. 195, 223 (2011) (addressing the same limitation in former section 199).

Congress put some effort into drawing the line between qualified trades or businesses eligible for the deduction and those trades or businesses that are not eligible. However, it did not include drug trafficking businesses in the detailed list of businesses that are not eligible for the deduction. *See* § 199A(d)(1) and (2). And Congress did not amend section 280E to disallow the section 199A deduction, leaving respondent conceding that it is available with respect to petitioners' cannabis-related businesses.

II.      *Computation of Section 199A Deduction*

In order to determine the amount of a taxpayer's section 199A deduction, the taxpayer's businesses must first be considered one by one, both to separate the qualified trades or businesses from those not eligible for the deduction, *see* § 199A(d)(1), and to separate the qualified trades or businesses from each other, *see* § 199A(b)(1)(A), (2). Then, qualified items of income, deduction, gain, or loss with respect to each qualified trade or business must be identified. *See* § 199A(c)(1), (3). That requires determining to which business each item of gross income is

"properly allocable" and to which items of gross income each item of deduction is "properly allocable." *See* § 199A(c)(3)(B)(iii), (vii); Treas. Reg. § 1.199A-3(b)(5).[1] Given that qualified items of income and deduction must both be properly allocable to a qualified trade or business, *see* § 199A(c)(1), and meet the other statutory criteria, such as being "included or allowed in determining taxable income," § 199A(c)(3)(A)(ii), only after those allocations are done can qualified items of income and deduction be identified. *Cf.* Treas. Reg. § 1.199A-3(b)(2)(ii)(H).[2]

The final step of the multistep process set forth in section 199A(c) is to determine net qualified business income for a particular qualified trade or business by netting all of the qualified items with respect to such business pursuant to section 199A(c)(1). However, the preliminary allocation steps have already served to identify wage expenses that are

---

[1] Although the regulations do not explicitly address the specific issue in these cases, they illustrate the understanding of the Department of the Treasury (Treasury) as to how the section 199A statutory scheme operates. The opinion of the Court highlights Treasury Regulation § 1.199A-2(b)(4), *see* op. Ct. note 9, but includes no discussion of the rules in Treasury Regulation § 1.199A-3 to which Treasury Regulation § 1.199A-2(b)(4) refers and which are contrary to respondent's position in these cases.

The allocation of "items of QBI"—meaning "items of income, gain, deduction, and loss"—prescribed by Treasury Regulation § 1.199A-3(b)(5) is consistent with the allocation that the Court has recognized is required to determine which of a taxpayer's deductions are subject to section 280E. *See Californians Helping to Alleviate Med. Probs., Inc. v. Commissioner*, 128 T.C. 173, 185–86 (2007) (discussing the allocation of expenses between a taxpayer's business subject to section 280E and its separate legal business). And it is consistent with allocations of expenses generally required under the Code in being to gross income in order to determine net income. *See, e.g.*, §§ 161, 863(a); Treas. Reg. § 1.861-8(a) and (b).

[2] Treasury Regulation § 1.199A-3(b)(2)(ii)(H) underscores that the allocation of compensation deductions is to a trade or business and gross income therefrom, and not to qualified business income as defined in section 199A(c)(1). Furthermore, in prescribing when compensation "will *reduce* QBI" (emphasis added), and not just be taken into account in computing qualified business income or be allocable to qualified business income, it contradicts the understanding of the opinion of the Court of those concepts as being equivalent. *Compare* Treas. Reg. § 1.199A-3(b)(2)(ii)(H), *with* Treas. Reg. § 1.199A-3(b)(4) ("Expenses for all wages paid . . . must be taken into account in computing QBI."), *and* Treas. Reg. § 1.199A-2(b)(4) ("W–2 wages are properly allocable to QBI if the associated wage expense is taken into account in computing QBI under § 1.199A-3."). And finally, by addressing the points separately, Treasury Regulation § 1.199A-3(b)(2)(ii)(H) also makes clear that the consideration of whether compensation is deductible for federal income tax purposes is separate and apart from the consideration of whether the compensation is properly allocable to a trade or business and thus the gross income and qualified business income therefrom.

properly allocable to income from a qualified business. And that income can be described as qualified business income. Accordingly, if a taxpayer has gross income from a qualified trade or business eligible for a section 199A deduction, wage expenses properly allocable to that gross qualified business income should constitute "W–2 wages" within the meaning of section 199A(b)(4).

III.  *Overall Statutory Framework*

The opinion of the Court focuses on the final step in section 199A(c) as necessarily prescribing for purposes of section 199A(b)(4)(B) what amounts are "properly allocable to qualified business income for purposes of subsection (c)(1)." More specifically, the opinion of the Court concludes that because wage expenses that are not allowed in determining taxable income are not qualified items of deduction, and therefore do not reduce qualified business income, they are also not properly allocable to qualified business income. But if Congress had intended that, it could have said so by using the same phrase—"allowed in determining"—that it used in defining the term "qualified items of deduction" or by using that term. Congress did not do that. And, as the opinion of the Court puts it, citing *Digital Realty Trust, Inc. v. Somers*, 583 U.S. 149 (2018), and *Knight v. Commissioner*, 552 U.S. 181 (2008): "The fact that it did not must be respected." *See* op. Ct. p. 12. However, such caselaw even more strongly supports the understanding that Congress did not intend "properly allocable to" in section 199A(b)(4)(B) to mean "allowed in determining," given that it "did not adopt this readily available and apparent alternative," *Knight v Commissioner*, 552 U.S. at 188, used in section 199A(c)(3)(A)(ii). Congress, therefore, presumably "intended a difference in meaning." *Digital Realty Tr.*, 583 U.S. at 161 (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each.").

Contrary to the assertion of the opinion of the Court, the inquiry into what different meaning Congress might have intended must consider the entirety of section 199A. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the

statute as a whole."). Starting with the definition of "W–2 wages" in section 199A(b)(4), and its cross-reference to section 199A(c)(1), it must be noted that it is inconsistent with the design of section 199A to allocate wage expenses to qualified business income as computed in section 199A(c)(1) "for purposes of" the computation of qualified business income in section 199A(c)(1). In fact, it would be circular to allocate to an amount "for purposes of" computing that amount. By contrast, the understanding that the allocation required for purposes of determining "W–2 wages" is to gross income is not only consistent with the operation of section 199A(c) and the regulations. It is also supported by former section 199(b)(2),[3] which is duplicated by section 199A(b)(4) nearly verbatim. And it is supported by current section 199A(g)(1)(B)(ii), which the opinion of the Court would interpret to apply a completely different meaning of "properly allocable" despite being enacted by the same Congress to appear in the same Code section. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. T, § 101(a)(1), 132 Stat. 348, 1151.

IV.    *Interaction of Sections 199A and 280E*

Petitioners' position is also supported by the rate reduction and job creation purposes of section 199A. Respondent argues, and the opinion of the Court apparently agrees, *see* op. Ct. note 10, that petitioners inappropriately seek to maximize the amount of their "W–2 wages" in order to maximize the amount of the deduction to which they are entitled. I appreciate the concern that petitioners are deducting the lower amount of wage expenses allowed after application of section 280E, thereby increasing their qualified business income under section 199A(c)(1), while seeking to take into account a higher amount of wage expenses unlimited by section 280E for purposes of the cap based on "W–2 wages." However, because the higher amount of "W–2 wages" is used only for purposes of the cap based on "W–2 wages," it does not allow the amount of the deduction to exceed 20% of qualified business income and taxable income (as determined for purposes of section 199A), which is higher simply by virtue of the application of section 280E. Accordingly, the drug-trafficking deterrence objective of section 280E is still furthered by the resulting overall tax burden relative to gross income,

---

[3] Treasury repeatedly explained that the section 199A regulations were based on the regulations implementing former section 199(b)(2). *See* Qualified Business Income Deduction, 83 Fed. Reg. 40,884, 40,887 (Aug. 16, 2018); T.D. 9847, 2019-9 I.R.B. 670, 705, 84 Fed. Reg. 2952, 2983 (Feb. 8, 2019).

as compared to a business that is not subject to section 280E.[4] And that is accomplished without a distorted reading of section 199A. Allowing a qualified business with meaningful wage expenses a deduction of up to 20% of taxable income, however taxable income is determined, is consistent with the goals of section 199A. Accordingly, I am not swayed by respondent's equitable, policy-based argument.

V.    *Conclusion*

For the reasons discussed herein, I would hold that "W–2 wages," as defined in section 199A(b)(4), are determined without regard to the application of section 280E. Such a conclusion is also supported by the understanding that "in statutes levying taxes . . . [i]f the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." *United States v. Merriam*, 263 U.S. 179, 187–88 (1923).[5] Accordingly, I respectfully dissent.

---

[4] Suppose, for example, that a taxpayer had $80,000 of qualified items of income with respect to a qualified trade or business, the only expenses with respect to which were $40,000 of wage expenses described in section 199A(b)(4)(A). Suppose further that those wage expenses, despite being properly allocable to the qualified trade or business, were not deductible in computing taxable income on account of the application of section 280E. The taxpayer's qualified business income would be $80,000, such that the uncapped amount of the deduction would be $16,000 (20% of $80,000), instead of the $8,000 (20% of $40,000 ($80,000 – $40,000)) that it would be if the wage expenses were deductible in computing qualified business income. Nevertheless, the cap based on "W–2 wages" would be $20,000 (50% of $40,000), instead of the zero that it would be if "W–2 wages" were determined after application of section 280E. And, if there were no difference between the taxpayer's qualified business income and taxable income, the taxpayer could therefore potentially be entitled to a deduction of $16,000 instead of $8,000. However, if a flat 30% rate would otherwise apply, the taxpayer would pay $19,200 (30% of $64,000 ($80,000 – $16,000)) of tax, or 24% of gross income, instead of the $9,600 (30% of $32,000 ($40,000 – $8,000)), or 12% of gross income, that would obtain if the qualified trade or business were not subject to section 280E.

[5] Section 199A provides a deduction, such that it could be argued that "countervailing tradition suggests that the ambiguity should be resolved in the government's favor." *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 839 n.1 (2001) (Stevens, J., dissenting). However, as discussed, it does so as a mechanism to reduce tax rates, suggesting that its function should be considered together with the underlying rules fixing tax at a particular rate, which undeniably levy taxes.